Robertson, Ch. J.
A corporation being an artificial creature of the law, it is a matter of no little difficuly to determine the tests by which its citizenship, within the meaning of the twelfth section of the judiciary act of Congress of the United States, passed in 1789 (1 Stat. at L., 78-80), is to be ascertained.
It was decided at quite an early period after the passage of *359 this act that the mere creation of a corporation by the laws of a State, did not necessarily make it as a person, a citizen of that State, within the meaning of that section, because its corporators might belong to different States (Hope Insurance Company v. Boardman, 5 Cranch, 57; Bank of the United States v. Deveaux, Id., 61), and it was held so until quite lately (Bank of Vicksburg v. Slocomb, 14 Pet., 60).
Subsequently it was held (as I understand it) that the State by whose laws a corporation is created determines its citizenship in the absence of any other test (Louisville, &c. R. R. Co. v. Letson, 2 How. S. Ct., 497), in the same manner as the birthplace of a natural person determines his citizenship, in the absence of any proof of a change of residence.
Such a doctrine is not inconsistent with the application of the test of either a natural or artificial person acquiring a residence elsewhere by carrying on their principal functions there. The principal functions of a corporation, and, indeed, the only mode in which its existence is actually made known to the community, is the transaction of the business for which it is chartered ; and that is carefully added in the case last cited as a necessary qualification of citizenship of a corporation in the State from which it derived its charter. Such is the interpretation given to such act in the case of Stevens v. Phenix Insurance Company (24 How. Pr., 518), in the supreme court of this State; and I see no reason to differ from the opinion given in that case.
' I do not perceive that the law of this State, prescribing that insurance companies should comply with certain requisitions before they should be allowed to transact business here, makes any distinction in the cases. It does not make them corporations of this State, or confer any special privileges. Of course the locality (if such a term can be applied to it) of a corporation must be determined in some measure by the same tests as the residence of natural persons. Where the principal part of its business is done is its locality; it may have necessary buildings and employees in other places, such as had the defendants in the case of Brooklyn Ferry Company v. Norwich and New York Transportation Company (Supreme Court, General Term, Second District), but that does not change its loca *360 tion, so far as citizenship under the United States judiciary act is concerned.
I do not understand that the supreme court of the United States, in any decisions made hy them, have held that the allegations in a petition for removal of a cause are to be considered as conclusive. Otherwise, it might be removed upon a false statement in any case. The affidavit of the attorney for the plaintiffs in this case states “ that the defendants have “ their agencies, docks, warehouses, and everything necessary “ to the carrying on of said business established in the city of “ ¡New York,” and that the cause of action in this case was for chattels destroyed in their warehouse in this city. It also shows that the general agent of the defendants, appointed under the provisions of the law of this State, requiring the appointment of persons by foreign corporations doing business in this State, upon whom process from the courts of this State against them could be served, agreed to admit service of process.
The very appointment of such an agent for such a purpose, in order to obtain the privilege of transacting business in this State, and the agreement by such agent to accept service of process, is virtually an admission of citizenship in this State for the purposes of such action. The object of the provison of the constitution giving the Federal courts jurisdiction over suits between citizens of different States, was to secure impartiality in the administration of justice. A corporation which may have aliens and citizens of all the States among its corporators, and which agrees, in order to acquire the right of doing business in another State from that where it was chartered, to appoint an agent, on whom process issuing out of the courts of that State may be served, may be fairly presumed to trust to the impartiality with which the courts of such last State will administer justice to it, and is estopped from setting up citizenship, or rather, location of its place of business elsewhere. The petition simply states that the principal office of the business of the defendants is in the State of Connecticut, its stockholders and directors meet, and its records are kept, and its governing power issues its orders there ; this may all be, and yet the public have no knowledge of such exercise of functions there. The palpable, visible, practical conducting *361 of its dai.y business in the city of New York is better proof of its real residence, if such a term be proper.
The motion must be denied, with costs.*

 In the case of Siebreoht against Butler, and several other actions by other plaintiffs against the same defendant (Supreme Court, First District; Special Term,, 1866), the removal of the causes was ordered, on the ground that the acts for which the defendant was sued were done by him as an officer of the United States army, and under and by virtue of authority, derived from the president and acts of Congress of the United States; and that, therefore, the case was within the act of Congress of 1863, entitling defendants in such cases to have a removal of the cause to a court of the United States.
The action of the plaintiff Siebreoht, was brought to recover compensation for services performed by him in New Orleans, upon compulsion of the defendant when he was in command of the United States army there.
The action of the plaintiff Tilden, alleged the conversion by the defendant of a vessel belonging to the plaintiff, at New Orleans, for the purchase of which from the plaintiff, the defendant had attempted to negotiate, but without coming to an agreement with him in reference to the price.
The action of the plaintiff Kearney, was to recover for property belonging to him which he alleged the defendant, when in command at New Orleans, had seized upon pretence that it was seized for the government, compelling the plaintiff to receive an inadequate compensation therefor.
The plaintiff Lester brought two actions, one for false imprisonment, and one for the conversion of his property, alleging that he -was arrested by the defendant when the latter was in command, and his property taken from him.
Messrs. Brown, Doolittle, Choate and Campbell, for the plaintiffs,—insisted that the causes of action were not acts under the authority derived from the president, within the meaning of the statute.
Messrs. Hackett and Trail, for the defendant.
Barnard, J.—As I construe the different acts of Congress, the defendant is entitled, as a matter of course, on filing a verified petition, to have those causes removed for trial to the United States courts. I cannot see what difference it would make to plaintiffs in what court they are tried. The United States court can try them as carefully and speedily as the State court. No delay will ensue, as the court is always in session. Motions granted.